## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **JOHN KENT STEPHENSON,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **NO. 2:16-CV-00071-JRG-RSP** |
| | § | |
| **CATERPILLAR, INC. AND** | § | **JURY TRIAL DEMANDED** |
| **SEARS MANUFACTURING CO.,** | § | |
| | § | |
| **Defendants.** | § | |

## THIRD-PARTY DEFENDANT BACKER BHV AB'S MOTION TO STRIKE SEARS MANUFACTURING CO.'S EXPERT, RAPHAEL A. FRANCO

### PRELIMINARY STATEMENT

1.      Sears retained Raphael A. Franco as an expert to opine on the design and workings of a seat heater in this case. His opinions also wander into the relationship between a final product manufacturer and a component part supplier/designer, with the evident intent of serving as a mouthpiece for Sears's attorney. Franco is not qualified to offer any of these opinions.

2.      Franco is a fire investigation consultant. While Franco may have experience as an expert witness in litigation, his experience is in fire cases and electrical shock accidents. He has never been involved with a case involving a seat heater before and has no prior experience in designing, evaluating, or testing seat heaters. His qualifications as an expert in this case appear to rest solely on a 20-hour continuing education course he took on electrical appliance fires and reviewing literature from internet searches.

3.      Even if he were qualified, his opinions that relate to Third-Party Defendant Backer BHV AB (Backer AB)[1] either ignore undisputed facts, cover topics that are not at issue, or are

---

[1] Third-Party Defendant Backer BHV AB's correct name is now "Backer AB." Backer AB is based in Sweden.

inadmissible "opinions" regarding corporate knowledge or intent. All of Franco's opinions regarding Backer AB should, therefore, be excluded.

## ARGUMENT AND AUTHORITIES

4.      The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Thus, the first inquiry under Rule 702 is determining whether the proffered witness is actually "qualified" to testify by virtue of his "knowledge, skill, experience, training, or education." A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject. *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

5.      Assuming the proffered witness is qualified, the court then evaluates the proposed testimony. Pursuant to Rule 702, the court must act as a gatekeeper, whose function involves a two-part inquiry into reliability and relevance. *See Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). To satisfy the reliability requirement, the expert testimony must be supported by appropriate

validation and must go beyond unsupported speculation or subjective belief. *Daubert*, 509 U.S. at 590. To satisfy the relevancy requirement, the expert testimony must assist the trier of fact to understand the evidence or determine a fact in issue. *Childs v. Entergy Miss., Inc.*, 2009 WL 2508128, at *2 (N.D. Miss. Aug. 13, 2009), aff'd, 411 F.App'x 699 (5th Cir. 2011). But, if the expert testimony is on matters within the common knowledge and experience of the jury, it does not assist the trier of fact, rendering the testimony inadmissible. *See Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990).

6.      Sears has retained Franco to opine on the design and workings of a seat heater in this case. His opinions also wander into the relationship between a final product manufacturer and a component part supplier/designer. He is not qualified to offer any of these opinions and, even if he was, his opinions that relate to Backer AB are either irrelevant, unreliable, or fall outside the scope of expert testimony.

## I.      Franco is unqualified to offer expert opinions in this case; he is a fire investigation consultant, not an expert in seat heater design and application.

7.      This case arises from the use of a heated seat in a piece of construction equipment. Franco has never been involved with a case involving a seat heater before and has no prior experience in designing, evaluating, or testing seat heaters.[2] After Sears retained him in this case, he "familiarized" himself with seat heaters by doing an internet search and reviewing "some literature on seat heaters."[3]

8.      Franco has a degree in electrical engineering.[4] However, he testified that: "they don't teach you anything about electrical heaters in engineering school."[5] He spent the bulk of his

---

[2] Deposition of Ray Franco, taken Sept. 28, 2018, at 9:1-3, attached as Ex. A.

[3] *Id.* at 11:21-12:25.

[4] Ray Franco CV at 2, attached as Ex. B.

[5] Ex. A at 9:6-9.

career (28 years) working for the U.S. Army Engineering Research & Development Laboratory making "measurements and designing sensors and data acquisition systems."[6] He then appears to have transitioned to working as a consultant for fire investigations.[7]

9.      He testified that he took one continuing education class "on appliances" in 1999 that informs his opinions.[8] It was a 20-hour class titled "Electrical Appliance Fires."[9] He thinks this class "told [him] what [he] needed to know about seat heater design" because "almost all appliances that use heat operate similarly, meaning I looked at furnaces, clothes dryers, coffee makers . . . . They basically all have a heating element and a thermostat in them."[10] He did not recall taking any other class that "involved electrical heaters."[11]

10.     Franco, therefore, has no prior experience working with seat heaters, disclaims that he learned anything about electrical heaters while earning his electrical engineering degree, and has no prior work experience or training that relates to the design or use of seat heaters or electrical heaters.

11.     His qualifications as an expert in this case appear to rest solely on a 20-hour continuing education course on electrical appliance fires that he took 20 years ago and reviewing literature from internet searches. This is insufficient to meet the requirements of Rule 702. Taking one continuing education course that tangentially discussed electrical heaters in the context of *fires* in *appliances* and reviewing some literature from internet searches does not make someone an expert in the design and use of seat heaters.

---

[6] Ray Franco Report, May 17, 2018, at 1, attached as Ex. C.

[7] *Id.*; Ex. B at 1.

[8] Ex. A at 9:19-10:19.

[9] *Id.*

[10] *Id.* at 13:6-14:16.

[11] *Id.* at 10:14-19.

12.     In addition, nothing in Franco's background qualifies him to opine on the relationship between a final product manufacturer and a component part supplier/designer or what a final product manufacturer or component part supplier/designer knew or should have known.

13.     The objective of the Court's gatekeeping requirement is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Franco has no personal experience to rely on. Nor does he have any relevant professional studies to fall back on. Sears is asking the Court to qualify Franco as an expert based on claimed general knowledge of how electrical heaters work in appliances from one class and internet searches—and yet—Sears's in-house engineers who have a general understanding of how heating elements work and have been incorporating seat heating systems into Sears seats since the late 1990s disclaim any expertise in seat heaters.[12]

14.     Franco is clearly an experienced expert witness. His CV indicates that he has been working as an expert witness for well over 10 years and has been deposed or testified in court over 25 times.[13] However, nearly all of the cases listed were fire or electrical shock accident cases.[14] His background might "permit him to learn faster than others about the design and safety aspects" of seat heaters through internet searches, but that does not qualify him as an expert. *See Shreve v. Sears, Roebuck & Co.*, 166 F.Supp.2d 378, 394 (D. Md. 2001)*; Silva v. Am. Airlines, Inc.*, 960 F.Supp. 528, 531 (D. P.R. 1997). "An expert must have specific knowledge, not mere capacity to

---

[12] Deposition of Glenn Dugan, as corporate representative, taken Dec. 13, 2018, at 21:2-24, 23:21-24:11, 100:13-17, 103:21-104:6, attached as Ex. D.

[13] Ex. B at 11-16.

[14] *Id.*

acquire knowledge." *Shreve*, 166 F.Supp.2d at 394. To qualify as an expert here, an expert must have specifically worked with, tested, or in some fashion studied seat heater design and applications. *See Silva*, 960 F.Supp. at 531. Franco has not done so. The Court should, therefore, exclude all of his opinions in this case.

## II.     Franco's opinions are irrelevant and unreliable.

15.     Franco's report contains 19 separate "Conclusions and Expert Opinions."[15] Several of Franco's opinions are quite troubling and raise the question of whether he is merely an "expert for hire," advocating on behalf of the party that hired him regardless of the facts of this case.

16.     His testimony on Opinion No. 9 and his subsequent withdrawal of this opinion is illustrative of why Franco's opinions are so troubling. Franco's Opinion No. 9 states:

> Backer/Calesco was already a major supplier of window and seat heaters to the automotive industry. Backer and Calesco should have anticipated that their heater would be powered from the alternative voltage (14.7 VDC) instead of battery voltage (12.5 VDC).[16]

Early in his deposition, Franco testified that Caterpillar provided a specification expressly stating that the voltage for the seat heater would be "12 volts."[17] Based on that, Franco testified that he "would expect [the voltage] to be 12 volts" and that it was reasonable for Sears to assume the voltage would be "12 regulated volts."[18] Franco painted himself into a corner with this testimony: on the one hand, he opined it was reasonable for Sears (his client) to rely on the specification of Caterpillar, but on the other, he opined it was not reasonable for Backer AB (his client's opponent) to rely on that same specification when presented it by Sears. This was just the first instance of Franco bending over backwards to support Sears's position in this case. Ultimately, Franco

---

[15] Ex. C at 11-13.

[16] *Id.* at 11.

[17] Ex. A at 49:25-50:4.

[18] *Id.* at 51:15-20, 54:7-16.

conceded his blatant double-standard and withdrew Opinion No. 9 in an effort to stave off additional cross-examination about it.

17.     Courts have long warned of such experts and noted that professional expert witnesses are available to render an opinion on almost any theory, regardless of its merit. *Chaulk by Murphy v. Volkswagen of Am., Inc.*, 808 F.2d 639, 644 (7th Cir. 1986) (quoting *Keegan v. Minneapolis & St. Louis R.R.*, 78 N.W. 965, 966 (Minn. 1899)) (noting the problem of expert witnesses who are "often the mere paid advocates or partisans of those who employ and pay them, as much so as the attorneys who conduct the suit. There is hardly anything, not palpably absurd on its face, that cannot now be proved by some so-called 'experts.'"). While Franco withdrew Opinion No. 9, he is sticking by all of the others.[19] As discussed below, several of these opinions should be excluded because they ignore undisputed facts, are irrelevant, or are beyond the scope of expert testimony.

### A.     Franco's Opinions Nos. 7 and 19 ignore undisputed facts.

18.     In both his report and in his deposition, Franco incorrectly asserts that "Backer/Calesco" chose to use a 50ºC thermostat in the heating element.[20]

---

[19] *Id.* at 145:11-18.

[20] *See id.* at 132:5-134:9; Ex. C at 11-13.

No. 7

The first samples of the Backer/Calesco heater were taking nearly an hour to cut back on after the temperature of the high limit thermostat was reached. To solve this problem, Backer/Calesco suggested raising the activation temperature of the thermostat from 97ºF (36ºC) to 122ºF (50ºC).

No. 19

There is nothing wrong with the design concept of this heater. This design has been used many times, and it has been proven to be reliable and safe. The beauty of the design is its simplicity. You do not need a controller with a microcomputer to make a safe product. Backer/Calesco chose a less than optimal thermostat with a large tolerance (+/- 9ºF) and less than optimal endurance (only 10,000 cycles).[21]

19.    Sears's corporate representatives have already testified repeatedly that Sears chose the 50ºC threshold for the thermostat (thermal protector).[22] Franco appears to be more than willing to ignore or contort the facts to render an opinion he thinks is helpful to the party that hired him. Experts cannot ignore relevant evidence by cherry-picking the facts which conform to a desired outcome. *See Barber v. United Airlines, Inc.*, 17 Fed.Appx. 433, 437 (7th Cir. 2001) ("Because in formulating his opinion [the expert] cherry-picked the facts he considered to render an expert opinion, the district court correctly barred his testimony because such a selective use of facts fails to satisfy the scientific method and *Daubert*, and it thus fails to 'assist the trier of fact.'"); *360 Mortgage Group, LLC v. Homebridge Fin. Servs., Inc.*, 2016 WL 6075566, at *4 (W.D. TX Apr. 22, 2016).

---

[21] Ex. C at 11-13.

[22] Ex. D at 108:12-14, 110:21-111:13; Deposition of Glenn Dugan, as corporate representative, taken Feb. 5, 2018, at 99:21-100:15, 102:7-14, attached as Ex. E; Deposition of Steven Eickenroht, as corporate representative, taken Dec. 19, 2017, at 127:10-14, attached as Ex. F.

20.    Franco also opined at his deposition that "Calesco" designed the seat heater system in the seat at issue.[23] Plaintiff's counsel then asked Franco whether "Calesco" designed various individual components of the seat heater system including the seat, foam, and electrical system.[24] Franco admitted that "Calesco" did not design any of these but that they were all components of the seat heater system.[25] Plaintiff's counsel then asked Franco again whether it was still his opinion that "Calesco" designed the seat heater system.[26] Franco again said "Yes."[27] When pressed for an explanation for this absurd position, he testified that "Calesco" designed the heating element which is "paramount in the performance of that heater."[28]

21.    Opinions Nos. 7 and 19 and Franco's opinion that "Backer/Calesco" designed the seat heater system are, therefore, unreliable and should be excluded.

**B.    Franco's Opinions Nos. 8, 10, and 19 are irrelevant.**

22.    Franco offers several opinions regarding the "endurance" of the thermostat in the heating element, Opinions Nos. 8, 10, and 19:

No. 8

The thermostat in Backer/Calesco's design was rated for only 10,000 operations (Appendix B). The thermostats that were used in similar products were rated at 100,000 operations (Appendix C). To solve the durability problem Backer/Calesco moved the thermostat away from the heater wire. This is the reason that it takes a while for the thermostat to feel temperature changes that occur at the seat surface, and it is the reason that thermostat temperature is often slightly below the seat surface temperature.

---

[23] Ex. A at 61:18-62:1.

[24] *Id.* at 62:2-23.

[25] *Id.*

[26] *Id.* at 62:24-63:1.

[27] *Id.*

[28] *Id.* at 63:2-16.

No. 10

The Backer/Calesco heater design should have been self regulating so that under expected operating conditions, the thermostat in the heater was not necessary to regulate the seat temperature. The thermostat is only rated for 10,000 operations. The thermostat's sole purpose should have been to limit the temperature under abnormal conditions.

No. 19

There is nothing wrong with the design concept of this heater. This design has been used many times, and it has been proven to be reliable and safe. The beauty of the design is its simplicity. You do not need a controller with a microcomputer to make a safe product. Backer/Calesco chose a less than optimal thermostat with a large tolerance (+/- 9°F) and less than optimal endurance (only 10,000 cycles).[29]

23.     The thermostat's "endurance" is not at issue. These opinions, therefore, will not help the jury determine any issue of fact and will only serve to confuse and mislead the jury. Franco admitted they had no bearing on the underlying injury during his deposition:

> Q.     Yeah. "The H-E-N-G-X-I-N thermostat is also only rated for 10,000 operations endurance. The thermostat used by Sears' previous vendor was rated for 100,000 operations. This could be the difference between a heater lasting one year versus ten years." Correct?
>
> A.     Correct.
>
> Q.     All right. Does that fact make any difference in whether or not Kent Stephenson was injured?
>
> A.     No.[30]

These opinions should, therefore, be excluded as irrelevant.

---

[29] Ex. C at 11-13.

[30] Ex. A at 120:24-121:10.

### C.   Franco's Opinion No. 6 on Sears's intent or knowledge is inadmissible.

24.   Franco's Opinion No. 6 offers an opinion regarding Sears's intent, knowledge, or state of mind. This is inappropriate.

> No. 6
>
> Sears manufactures seats. They do not have the expertise and resources to design and/or manufacture heaters for seats. They depend on seat-heater companies to design and provide them with a safe product.[31]

25.   Several district courts have held that such testimony about "corporate intent" or "state of mind" is inadmissible. For example, in *In re Rezulin Products Liability Litigation*, 309 F.Supp.2d 531, 545-546 (S.D.N.Y. 2004), the district court found inadmissible expert testimony concerning the motive, intent, and state of mind of the defendants and others. The district court found that "the opinions of these witnesses on the intent, motives or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise." *Id.* at 546. The district court characterized the testimony as "musings as to defendants' motivations [that] would not be admissible if given by any witness—lay or expert." *Id.* Additionally, the *Rezulin* Court found that the testimony describes "lay matters which a jury is capable of understanding and deciding without the expert's help" and that "'the question of intent is a classic jury question and not one for the experts.'" *Id.* at 546–547 (quoting *In re Diet Drugs*, 2000 WL 876900, at *9 (E.D. Pa. Jun. 20, 2000)); *see also In re Fosamax Prods. Liab. Lit.*, 645 F.Supp.2d 164, 192 (S.D.N.Y. 2009) (relying on *In re Rezulin* in granting defendant's motion to preclude an expert from testifying as to the knowledge, motivations, intent, state of mind, or purposes of the defendant, its employees, the FDA, or FDA officials).

---

[31] Ex. C at 11.

26.      The Eastern District of Texas has also held that such testimony is inadmissible as it is within the understanding of the jury and has no basis in an expert's qualifications or expertise. *See Retractable Techs. Inc. v. Abbott Labs., Inc.*, 2010 WL 11531436, at *5 (E.D. TX Jun. 18, 2010). While an expert witness may draw inferences and reach conclusions, those inferences and conclusions must nevertheless conform with the other Rules, namely, that the opinion be based on scientific, technical, or specialized knowledge. Franco's Opinion No. 6 is his impression or inference of Sears's knowledge, beliefs, or intent which falls well within the understanding of the jury. It should, therefore, be excluded. *See Peters*, 898 F.2d at 450 (if expert testimony is on matters within the common knowledge and experience of the jury, it does not assist the trier of fact, and is inadmissible).

### D.      Franco's Opinion No. 11 regarding his (inaccurate) impression of the facts in inadmissible.

27.      Similarly, Franco's opinion No. 11 is another inference based on his review of the documents he was provided.

> No. 11
>
> Backer/Calesco expressed no concerns regarding safety over its single stage heater product to Sears.[32]

Whether "Backer/Calesco" expressed any "concerns regarding the safety" of the heating element at issue is not something that is outside the understanding of the jury. No expert testimony is needed on this subject. *See id.* This opinion is also misleading because it is not based on the entirety of the evidence that will be admitted at trial; it is only based on what Franco chose to review.

---

[32] *Id.* at 12.

**CONCLUSION**

28.     Franco is not qualified to opine on the design and workings of a seat heater. Allowing him to do so will cloak his unqualified opinions (some of which merely parrot Sears's legal arguments while others contradict Sears's corporate representatives' own testimony) in the guise of expert testimony, misleading the jury and prejudicing Backer AB.

29.     Franco is a fire investigation consultant. While Franco is an experienced expert witness, his experience is in fire cases and electrical shock accidents. He has never been involved with a case involving a seat heater before and has no prior experience in designing, evaluating, or testing seat heaters. His qualifications as an expert in this case appear to rest solely on a 20-hour continuing education course he took on electrical appliance fires and reviewing literature from internet searches. This is not sufficient to satisfy Rule 702.

30.     And even if he were qualified, his opinions that relate to Backer AB either ignore undisputed facts, cover topics that are not at issue, or are inadmissible "opinions" regarding corporate knowledge or intent. All of Franco's opinions regarding Backer AB should, therefore, be excluded. Backer AB also requests any other and further relief to which it may be entitled.

Dated: January 21, 2019                    DRINKER BIDDLE & REATH LLP

By: _George McCall_____
     George S. McCall, Bar No. 13344800
     George.McCall@dbr.com
     Susan E. Egeland, Bar No. 24040854
     Susan.Egeland@dbr.com
     Matthew C. Sapp, Bar No. 24063563
     Matt.Sapp@dbr.com
     1717 Main Street, Suite 5400
     Dallas, TX 75201-7367
     Telephone: 469-357-2500
     Facsimile:  469-327-0860

     **Attorneys for Third-Party Defendant**
     **BACKER BHV AB (Backer AB)**


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served to all counsel of record in accordance with the Federal Rules of Civil Procedure on January 21, 2019, via ECF notification.

     */s/ Susan E. Egeland*_____
     Susan E. Egeland


## CERTIFICATE OF CONFERENCE

This is to certify that counsel has complied with the meet and confer requirements of Local Rule CV-7(H) by conducting a personal conference by telephone on January 21, 2019 (Preston McGee for Sears and Susan Egeland for Backer AB). Counsel for Backer AB also emailed all counsel of record on January 18, 2019 to advise of Backer AB's intent to file this motion as to Sears's expert. The parties could not reach an agreement because counsel for Sears does not agree to withdraw or limit the testimony of Raphael A. Franco at this time. As a result, Sears opposes this Motion. The parties' discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve. Signed this January 21, 2019.

     */s/ Susan E. Egeland*_____
     Susan E. Egeland