**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| JOHN K. STEPHENSON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:16-CV-00071-JRG-RSP |
| | § | |
| CATERPILLAR INC. and SEARS | § | |
| MANUFACTURING CO., | § | |
| | § | |
| *Defendants*. | § | |

## REPORT AND RECOMMENDATION

Before the Court are two summary judgment motions filed by Defendant and Cross-Plaintiff Caterpillar Inc. ("Caterpillar") in this products liability suit. First, Caterpillar moves for summary and declaratory judgment on its claims that Cross-Defendant Sears Manufacturing Co. ("Sears") has contractual and statutory duties to indemnify Caterpillar. [Dkt. No. 179]. Second, Caterpillar moves for summary judgment on all of Plaintiff John Stephenson's claims. [Dkt. No. 194].

## BACKGROUND AND PROCEDURAL HISTORY

### A. Plaintiff's Claims Against Caterpillar and Sears

On January 20, 2016, Plaintiff filed this lawsuit against Caterpillar for severe burn injuries sustained to his lower body while operating a Caterpillar 259D Skid Steer Loader in April 2014. [Dkt. No. 1]. The 259D skid loader features a seat heater with an activation switch, and Plaintiff alleges that he was unaware that the seat heater was activated as there were no visible controls or indicator lights. *Id.* at ¶¶ 11-12. Plaintiff alleges that the seat malfunctioned and overheated, resulting in Plaintiff sustaining severe burning and blistering to his right and left ischial areas that

1

required medical treatment involving multiple wound debridement and hyperbaric treatments. *See id.* at ¶ 12. Due to these injuries, Plaintiff brings a products liability action under the Texas Products Liability Act and asserts claims of design defect, manufacturing defect, marketing defect, negligence, and gross negligence against Caterpillar. *Id.* at ¶¶ 21-42. On April 21, 2016, Plaintiff amended his complaint by adding Defendant Sears Manufacturing Co. ("Sears"), alleging that the 259D skid loader was purchased from Caterpillar and that Caterpillar contracted with Sears for the manufacture and/or design of the seat for the 259D skid loader. [Dkt. No. 20], ¶ 25.

### B. Caterpillar's Crossclaims Against Sears

On August 8, 2016, Caterpillar filed a crossclaim against Sears. [Dkt. No. 37]. Caterpillar has since amended its crossclaim several times, [Dkt. Nos. 38, 54, 55, 147, and 175], and brings four claims against Sears. [Dkt. No. 175]. First, Caterpillar brings a breach of contract claim, arguing that Sears failed to indemnify and defend Caterpillar against Plaintiff's lawsuit pursuant to a contract, a Purchase Order, made between Caterpillar and Sears. *Id.* at ¶¶ 82-83. Second, Caterpillar brings a claim for common law indemnification. *Id.* at ¶¶ 84-85. Third, Caterpillar brings a statutory indemnity claim under Texas Civil Practice & Remedies Code § 82.002, arguing that Sears has a statutory duty to indemnify Caterpillar for Plaintiff's claims. *Id.* at ¶¶ 87-88. Fourth, Caterpillar brings a breach of warranty claim, arguing that Sears breached the Purchase Order's provisions that the seat heater would be free from defects. *Id.* at ¶¶ 89-90. Caterpillar seeks attorneys' fees pursuant to the Purchase Order and the Texas Civil Practice & Remedies Code § 82.002. *Id.* at ¶ 91.

### C. Sears's Third-Party Claims Against Backer Heating Technologies, Inc. and Backer BHV AB

On July 27, 2017, Sears filed a third-party complaint against Backer HTI, alleging that in the event Sears is found liable for Plaintiff's injuries, Backer HTI is liable to Sears for Plaintiff's alleged damages under contribution and indemnity theories. [Dkt. 68] ¶ 9. On May 24, 2018, Sears amended its third-party complaint to bring a common law indemnity claim and a statutory indemnity claim under Texas Civil Practice & Remedies Code § 82.002 against Backer HTI. [Dkt. 176] ¶¶ 10-11.

On June 25, 2018, Sears filed a third-party complaint against Backer BHV AB and Backer HTS Co., Ltd. [Dkt. 199].[1] Sears alleged that because Backer BHV AB and/or Backer HTS designed and/or manufactured the 259D skid loader's seat heater, Backer BHV AB and/or Backer HTS are liable to Sears for Plaintiff's alleged damages under the legal theories of contribution and indemnity. *Id.* at ¶¶ 8, 11.

On September 20, 2018, Sears amended its third-party complaint against Backer HTI to bring an additional claim for contractual indemnity pursuant to a warranty agreement. [Dkt. 220]. ¶ 10. On September 21, 2018, Sears filed an amended third-party complaint against Backer BHV to include an additional claim of contractual indemnity. [Dkt. 222] ¶ 11.

### D. Caterpillar Moves for Summary and Declaratory Judgment on Two of its Claims Against Sears

On June 6, 2018, Caterpillar moved for summary and declaratory judgment on its breach of contract claim and its statutory indemnity claim under Texas Civil Practice & Remedies Code § 82.002. [Dkt. No. 179].

Caterpillar's motion for declaratory judgment was brought under both the Texas

---

[1] Backer BHV AB has also been referred to as "Calesco" and "Backer Calesco."

Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code § 37.001, *et seq.* ("TDJA") and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* ("FDJA"). This motion is inappropriate for two reasons. First, "the TDJA is a procedural, and not a substantive, provision and therefore does not apply to actions in federal court." *Vera v. Bank of Am., N.A.*, 569 F. App'x 349, 352 (5th Cir. 2014) (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)). Second, the procedure for obtaining a declaratory judgment under the FDJA is governed by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 57. "As such, 'the requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions.'" *Matrix Partners VIII, LLP v. Nat. Res. Recovery, Inc.*, No. 1:08-CV-547-TH, 2009 WL 10677790, at *1 (E.D. Tex. May 22, 2009) (quoting *Kam–Ko Bio–Pharm Trading Co., Ltd–Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009)). Relying on guidance from the Ninth Circuit Court of Appeals, Judge Thad Heartfield recognized that:

> a party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment. Insofar as plaintiffs seek a motion for declaratory judgment, plaintiffs' motion is denied because such a motion is inconsistent with the Federal Rules. The only way plaintiffs' motion can be construed as being consistent with the Federal Rules is to construe it as a motion for summary judgment on an action for a declaratory judgment.

*Matrix Partners*, 2009 WL 10677790, at *1 (quoting *Kam–Ko Bio–Pharm*, 560 F.3d 943). Caterpillar did not plead a claim for declaratory judgment relief against Sears in its latest crossclaim. [Dkt. No. 175]. Thus, Caterpillar's motion for declaratory judgment under the TDJA and the FDJA is procedurally defective and should be **DENIED**. Nonetheless, the Court will evaluate Caterpillar's summary judgment motion on its crossclaim on the merits.

**E. Caterpillar Moves for Summary Judgment on All of Plaintiff's Claims**

On June 21, 2018, Caterpillar moved for summary on each of Plaintiff's claims, alleging that Plaintiff cannot establish each element of all of his claims. [Dkt. No. 194].

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact by either (1) presenting evidence that affirmatively demonstrates the absence of any genuine issue of material fact, or (2) after adequate time for discovery, demonstrating that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party cannot defeat summary judgment by resting on mere denials or allegations, but must set forth specific facts sufficient to raise a genuine issue of fact. *Id.* at 324. In examining the record, the court should do so in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

**A. Caterpillar's Motion for Summary Judgment on its Indemnity Claims [Dkt. No. 179]**

Caterpillar asks this Court to find as a matter of law that Sears must indemnify and defend Caterpillar for Plaintiff's claims for two reasons. [Dkt. No. 179]. First, Caterpillar moves for summary judgment on its contractual indemnity claim, arguing that Sears failed to defend and indemnify Caterpillar against Plaintiff's claims under a Purchase Order governing Caterpillar's

purchase of the 259D skid loader seat from Sears. *Id.* at ¶ 15. Second, Caterpillar moves for summary judgment on its statutory indemnity claim, arguing that Sears has a duty to indemnify Caterpillar for Plaintiff's claims under Texas Civil Practice and Remedies Code § 82.002. *Id.* at ¶ 20. The Court will address each of these arguments in turn.

### 1. Caterpillar's Contractual Defense and Indemnity Claim

Caterpillar argues that Sears, by failing to defend and indemnify Caterpillar, breached the indemnification provision in a Purchase Order made between Caterpillar and Sears. [Dkt. No. 179], ¶ 15. The indemnification provision of the Purchase Order states:

> **16. Indemnification.** Seller agrees to indemnify, defend and hold harmless Buyer, Buyer's affiliates, and Buyer's and Buyer's affiliates' respective directors, officers, employees, shareholders, agents, successors, assigns, consultants and business invitees from and against any and all claims and demands, liabilities, losses, damages, costs, enforcement procedures and expenses, of whatsoever nature (including costs, litigation expenses and counsel fees incurred in connection therewith) arising out of injury to, or death of, any person whatsoever or injury or damage to property of any kind by whomsoever owned, or the environment, arising out of or related to, directly or indirectly, the following:
>
> ***
>
> d.        any claim of defect in the design, materials, manufacture or sale of the Items;

Purchase Order [Dkt. No. 179-3], ¶ 16. Caterpillar contends that this provision covers Plaintiff's claims, as Plaintiff's claims concern a defect in the 259D skid loader seat. [Dkt. No. 179], ¶ 16. Thus, Caterpillar asserts, Sears breached this provision under Texas law. *Id.* at ¶ 16.

Sears opposes Caterpillar's contentions. [Dkt. No. 227]. Sears argues that the Purchase Order should first be construed under North Carolina law, not Texas law, pursuant to the Purchase Order's choice-of-law provision entitled "Entire Agreement; Governing Law." *Id.* at ¶ 3. The Governing Law Provision states:

> **3. Entire Agreement; Governing Law.** [...] These Terms and Conditions and any

6

Purchase Order shall be governed by and construed under the laws of the jurisdiction where the office of Buyer issuing the Purchase Order is located.

[Dkt. No. 179-3], ¶ 3. Sears offers the affidavit of Steven Eickenroht, Sears's Caterpillar Business Unit Director, who swears that the Purchase Order was issued from a Caterpillar location in North Carolina. Eickenroht Affid., [Dkt. No. 227-1]. Caterpillar does not dispute the applicability of North Carolina law. Instead, Caterpillar argues that either under North Carolina or Texas law, Sears must indemnify Caterpillar for Plaintiff's claims. [Dkt. No. 237], ¶ 5.

In light of the lack of opposing contentions, Eickenroht's affidavit, and a review of the Purchase Order, the Court finds that the Purchase Order's choice-of-law provision counsels for the application of North Carolina substantive law to Caterpillar's breach of contract claim.[2] Such choice-of-law provisions are unquestionably enforceable. *Weeks Marine, Inc. v. Standard Concrete Prod., Inc.*, 737 F.3d 365, 369 (5th Cir. 2013).

### a. Duty to Defend

Although the parties' briefing appears to be devoted primarily to whether Sears has a contractual duty to indemnify Caterpillar, Caterpillar has still made the argument that a duty to defend exists. Caterpillar contends that the Purchase Order's indemnification provision is unambiguous and specifically requires Sears to indemnify and defend Caterpillar against all lawsuits and claims arising out of or related to the use of the Seat. [Dkt. No. 179], ¶ 15; [Dkt. No. 237], ¶ 6. Caterpillar points out that the basis of Plaintiff's claims is an alleged defect in the seat. *Id.* at ¶ 7.

Sears argues that Plaintiff's claim is based only in part on a defect in the seat, and is also based on Caterpillar's decisions concerning the design of the 259D skid loader. [Dkt. No. 227], at

---

[2] As the parties do not dispute that North Carolina law governs this contractual dispute, a choice-of-law analysis is not required. *See e.g. Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004) (finding that a choice of law analysis was required in a case in which the parties did not agree on which state's law applied to the controversy).

¶ 5. Sears argues that Caterpillar, not Sears, submitted design specifications concerning other components of the 259D skid loader, such as the heater switch and the indicator light. *Id.* at ¶ 8. Because Caterpillar specified how it wanted the seat designed, and Sears was contractually bound to design the seat according to Caterpillar's specifications, Sears alleges that there is no basis to conclude that the parties contemplated that Sears would be obligated to indemnify Caterpillar for its own design decisions. *Id.* Thus, Sears contends, Plaintiff's claims were not intended to come within the meaning of the Purchase Order. *Id.* at ¶ 4.

The Court is inclined to agree with Sears. Under North Carolina law, a duty to defend exists if the contract so provides. *See Brown v. Lumbermens Mut. Cas. Co.*, 390 S.E.2d 150, 152 (N.C. 1990). [3] North Carolina courts apply the "comparison test" to determine whether defense is required. *Danby of N. Am., Inc. v. Travelers Ins. Co.*, 25 Fed. App'x 186, 190 (4th Cir. 2002). Under the comparison test, the contract and complaint are read side-by-side to determine whether the events as alleged trigger a duty to defend. *See New NGC, Inc. v. Ace Am. Ins. Co.*, 105 F. Supp. 3d 552, 560 (W.D. N.C. 2015) (citing *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 692 S.E.2d 605, 610 (N.C. 2010)).

A side-by-side comparison of the Purchase Order and Plaintiff's amended complaint [Dkt. No. 20], which is presumed to be true, leads the Court to conclude that not all of Plaintiff's claims are contemplated by the Purchase Order, as many of Plaintiff's claims also stem from the marketing and distribution of the 259D skid loader. *See* [Dkt. No. 20], ¶¶ 24-41. Therefore, Caterpillar has failed to demonstrate the absence of any genuine issue of material fact regarding the alleged

---

[3] Much of North Carolina law focuses on the duty to defend and indemnity in the context of an insurance policy. However, because an insurance policy is a contract, the Court will apply North Carolina insurance case law to the matter at hand.

contractual duty to defend. Caterpillar is not entitled to summary judgment on its breach of contract claim for an alleged duty to defend.

### b. Duty to Indemnify

Caterpillar asserts that Plaintiff's claims are encompassed by the Purchase Order's indemnification provision because "Sears admits the Seat it supplied to Caterpillar is defective." [Dkt. No. 237], ¶ 7 (citing Franco Dep., [Dkt. No. 237-1], 164:16-21). Caterpillar thus contends that the Purchase Order should be construed under North Carolina law, where indemnity provisions are construed to cover losses contemplated by the parties. [Dkt. No. 237], ¶ 5 (citing *Dixie Container Corp. v. Dale*, 160 S.E.2d 708 (N.C. 1968)). Sears opposes this argument and contends that it is premature for the court to find that a duty to indemnify exists. [Dkt. No. 227], ¶ 1.

As a preliminary matter, Caterpillar misconstrues the deposition testimony it cites from Raphael Franco, Sears's retained expert. The cited excerpt from Franco's deposition reads as follows:

> Q. You would agree with me that based on your opinion that the supplier of the seat heater system to Sears provided an unsafe product, then Sears in turn provided an unsafe product to Caterpillar.
>
> A. Correct.

Franco Dep., [Dkt. No. 237-1], 164:16-21. This excerpt cannot reasonably be construed as an admission by Sears that the 259D skid loader seat is defective.

Setting aside the mischaracterization, the Court agrees with Sears – it is too early to determine indemnification obligations. Under North Carolina law, the duty to indemnify is measured by the facts ultimately determined at trial. *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 377 (N.C. 1986). At least one exception to this general rule exists. In the post-settlement context, facts pertinent to the determination of indemnification obligations may be

determined on the basis of the record presented upon summary judgment motions. *Harleysville Mut. Ins. Co. v. Hartford Cas. Ins. Co.*, 90 F. Supp. 3d 526, 540, 554 (E.D.N.C. 2015) (citing *Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co.*, 524 S.E.2d 558 (2000) (affirming trial court determination, upon hearing summary judgment motions, that there were no issues of material fact and allocating indemnity obligation as a matter of law, for underlying action resolved by settlement agreement prior to trial)). Where the case is not in a post-settlement context, a duty to indemnify exists if the contract provision encompasses the facts as found by the trier of fact. *See Buzz Off*, 692 S.E.2d at 611.

North Carolina requires the Court to look at *adjudicated* facts in determining whether a duty to indemnify exists. Those facts have not yet been determined. Thus, it would be inappropriate for the Court to determine whether Sears has a contractual duty to indemnify Caterpillar according to the factual allegations in Plaintiff's complaint, *see Waste Mgmt.*, 340 S.E.2d at 377. To the extent Caterpillar seeks summary judgment on its breach of contract claim stemming from the alleged duty to indemnify outlined in the Purchase Order, Caterpillar's motion for summary judgment should be denied.

### 2. Caterpillar's Statutory Indemnity Claim

Caterpillar moves for summary judgment on its statutory indemnity claim under the Texas Product Liability Act, arguing that it is an innocent seller of the seat and that Sears is the manufacturer of the seat, thus entitling Caterpillar to indemnification by Sears. [Dkt. No. 179], ¶ 18. Sears responds that statutory indemnification is due when the seller is truly innocent, and there are claims by Plaintiff and facts in the record suggesting that Caterpillar was negligent regarding the location of the seat heater switch and the indicator light. *See* [Dkt. No. 227], ¶¶ 9-10.

The Texas Products Liability Act provides:

(a) A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

(b) For purposes of this section, "loss" includes court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages.

Tex. Civ. Prac. & Rem. Code § 82.002(a)-(b). A "seller" is defined as:

a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof.

*Id.* § 82.001(3). Under this section, a "'[p]roducts liability action' means:

any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories."

*Id.* § 82.001(2). There is no dispute that Plaintiff's lawsuit against Caterpillar and Sears is a products liability action within the meaning of the Texas Products Liability Act.

The statutory duty to indemnify: "(1) applies without regard to the manner in which the action is concluded; and (2) is in addition to any duty to indemnify established by law, contract, or otherwise." *Id.* § 82.002(e). However, a manufacturer does not need to indemnify and hold harmless a seller against a "loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable." *Id.* § 82.002(a).

Caterpillar's argument is premised on the assumption that it is a nonmanufacturing seller. This assumption is not supported by the evidence, as Sears, the nonmovant, has set forth specific facts that raise a genuine dispute as to whether Caterpillar is independently liable for the 259D

skid loader seat malfunction.

In support of its response [Dkt. No. 237], Sears submitted an expert report excerpt from John English, Plaintiff's retained expert and engineer, indicating that Caterpillar failed to perform an adequate safety analysis to evaluate the location of the seat heater activation switch, the risk of inadvertent switch activation, and the visibility of the seat heater indicator light. [Dkt. No. 227-2].[4] Sears bolsters English's expert report with deposition testimony from Eickenroht, who testified that Caterpillar designated where it wanted the heater switch located on the seat and where the seat heater would be located in the seat. *See* [Dkt. No. 227], ¶ 6. In support of its reply [Dkt. No. 244], Sears also submits deposition testimony from English [Dkt. No. 244-1]. English testified:

> Q. And is – in this case is the indicator light, in your opinion, visible from an operator station and compliant with 5.5.8.1?
>
> A. In my opinion, it does not meet that requirement, no.
>
> ***
>
> Q. And other than the issue related specifically to this case, are you aware of whether or not there are any other complaints or issues relating to the inadvertent switch activation that Caterpillar or Sears is aware of?
>
> A. Yes, I am aware of [sic].
>
> Q. Can you explain to me – let me ask a different question. With

---

[4] Caterpillar objects to the use of English's expert report on the basis that it is unsworn. [Dkt. No. 237], ¶ 3. The Federal Rules of Civil Procedure expressly contemplate objections to facts that are not supported by admissible evidence. *See* Fed. R. Civ. P. 56 (c)(2). To overcome such objections, the proponent of the fact must show that the material is admissible as presented or must explain the admissible form that is anticipated. *See Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017) ("The district court dismissed Captain Jamison's report solely because it was not sworn without considering Lee's argument that Captain Jamison would testify to those opinions at trial and without determining whether such opinions, as testified to at trial, would be admissible."); *see also* Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment ("The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."). Sears responds by offering English's deposition testimony. [Dkt. No. 244-1]. The Court construes this submission as a showing of the anticipated admissible form of English's opinion. Further, the Court understands that Plaintiff anticipates calling English at the upcoming trial. *See* [Dkt. No. 298-1]. The Court thus **OVERRULES** Caterpillar's objection.

regards to section 4.3, what information do you have if any that – well, do you believe that section 4.3 is complied with on the 259 skid steer at issue in this case?

A. In my opinion, it is not.

Q. What forms the basis of that opinion?

A. The physical condition of the switch and its location, as has been discussed at length itself, but also the fact that there is evidence of damage of the switch itself and inadvertent activation from the [sic] Caterpillar's own endurance testing and also postproduction complaints from customers and warranty repairs.

English, Dep., [Dkt. No. 244-1], 150:11-17, 152:3-153:5. This testimony thus indicates that Caterpillar is more than an innocent nonmanufacturing seller and creates a fact issue as to Sears's alleged negligence in the design of the seat. This conclusion is bolstered by deposition testimony from Jeffrey Hautanen, Plaintiff's retained expert and electrical engineer, who testified that Caterpillar had knowledge through testing that the seat overheated and failed to respond to that testing. *See* Hautanen Dep., [Dkt. No. 244-2], 142:7-12.[5]

Based on this evidence, a reasonable jury could find that Caterpillar is independently liable for the seat's malfunction because of the way it designed the seat's component parts – i.e., the placement of the seat heater activation switch and the seat heater indication light. Thus, Sears has defeated summary judgment by setting forth specific evidence that creates a genuine issue of fact as to statutory indemnification.

Accordingly, the Court finds that Caterpillar's summary and declaratory judgment motion [Dkt. No. 179] should be **DENIED**.

---

[5] The Court **OVERRULES** Caterpillar's objection to the use of English's and Hautanen's deposition testimony. [Dkt. No. 249]. The case law cited by Caterpillar addresses *arguments* raised for the first time in a reply, not *evidence* submitted for the first time in its reply. Given that Sears bears the burden of setting forth evidence that creates a fact issue, the Court will consider the deposition testimony.

**B. Caterpillar's Motion for Summary Judgment on Plaintiff's Claims [Dkt. No. 194]**

In its second motion for summary judgment, Caterpillar asserts it is entitled to judgment as a matter of law on Plaintiff's claims for two main reasons. *See* [Dkt. No. 194]. First, Caterpillar argues that Plaintiff's products liability action cannot be sustained against it because Caterpillar is a nonmanufacturing seller under Texas Civil Practice & Remedies Code § 82.003. *Id.* at ¶¶ 27-28. Second, Caterpillar argues that Plaintiff cannot establish the elements of each of his claims as pleaded under the exceptions found in Section 82.003. *See generally id.* The Court will address these contentions in turn.

**1. Caterpillar's Nonmanufacturing Seller Defense**

Caterpillar takes a second bite at the "manufacturer" apple. In shifting gears slightly from its motion for declaratory and summary judgment [Dkt. No. 179], Caterpillar argues that it is a nonmanufacturing seller because it did not participate in the design of the 259D skid loader seat. [Dkt. No. 194], ¶¶27-28; [Dkt. No. 242], ¶ 8. Caterpillar contends that "Plaintiff has admitted that Caterpillar is a nonmanufacturing seller of the Seat." [Dkt. No. 194], ¶27 (citing Plaintiff's First Amended Complaint, ¶ 13).

The Texas Products Liability Act defines "manufacturer" as:

> a person who is a designer, formulator, constructor, rebuilder, fabricator, producer, compounder, processor, or assembler of any product or any component part thereof and who places the product or any component part thereof in the stream of commerce.

Tex. Civ. Prac. & Rem.Code § 82.001(4). The Texas Supreme Court has stated that by the definitions of "manufacturer" and "seller," "all manufacturers are also sellers, but not all sellers are manufacturers." *Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249, 256 (Tex.2006). Texas law "provides blanket protection for nonmanufacturing sellers of products from

14

liability for injuries caused by a defective product unless one of the specified exceptions [under Section 82.003] appl[ies]." *Garcia v. LG Electronics USA Inc.*, 2011 WL 2517141, at *2 (S.D. Tex. June 23, 2011). Section 82.003 of the Texas Products Liability Act, entitled "Liability of Nonmanufacturing Sellers," states:

> (a) **A seller that did not manufacture a product** is not liable for harm caused to the claimant by that product unless the claimant proves:
>
>> (1) that the seller participated in the design of the product;
>>
>> (2) that the seller altered or modified the product and the claimant's harm resulted from that alteration or modification;
>>
>> (3) that the seller installed the product, or had the product installed, on another product and the claimant's harm resulted from the product's installation onto the assembled product;
>>
>> (4) that:
>>
>>> (A) the seller exercised substantial control over the content of a warning or instruction that accompanied the product;
>>>
>>> (B) the warning or instruction was inadequate; and
>>>
>>> (C) the claimant's harm resulted from the inadequacy of the warning or instruction;
>>
>> (5) that:
>>
>>> (A) the seller made an express factual representation about an aspect of the product;
>>>
>>> (B) the representation was incorrect;
>>>
>>> (C) the claimant relied on the representation in obtaining or using the product; and
>>>
>>> (D) if the aspect of the product had been as represented, the claimant would not have been

harmed by the product or would not have
suffered the same degree of harm;

(6) that:

(A) the seller actually knew of a defect to the product
at the time the seller supplied the product; and

(B) the claimant's harm resulted from the defect; or

(7) that the manufacturer of the product is:

(A) insolvent; or

(B) not subject to the jurisdiction of the court.

Tex. Civ. Prac. & Rem. Code § 82.003(a) (emphasis added). Section 82.003 commonly applies to

retail sellers of products. *Myong Re Kye v. Daimler Trucks N. Am., L.L.C.*, No. CIV.A. H-10-00805,

2012 WL 1553044, at *2 (S.D. Tex. Apr. 30, 2012) (citing seven examples).

Caterpillar's argument as to "admissions" is unconvincing. Plaintiff's First Amended

Complaint alleges that 259D skid loader seat was "manufactured and/or designed in whole or in

part by Defendant Sears Manufacturing Co." [Dkt. No. 20], ¶ 13. This allegation cannot be

construed as an admission that Caterpillar did not manufacture the 259D skid loader seat.

Caterpillar's statement mischaracterizes Plaintiff's allegations.

In any case, the Court rejects Caterpillar's nonmanufacturing seller argument for the same

reasons expressed above: not only is there a genuine fact dispute as to whether Caterpillar

participated in the 259D skid loader seat design and thus would not be a nonmanufacturing seller,

*infra*, but Plaintiff has presented sufficient evidence to bring his claims within the exceptions found

in Section 82.003. *See Bogamy v. Harrison Cnty.*, No. 2:11-cv-88-JRG, 2012 WL 1357711, at *3

(E.D. Tex. Apr. 19, 2012) (citations omitted) ("In a product liability action, 'any theory of recovery

plead against a non-manufacturing seller must fall within one of the seven exceptions to §

82.003'").

First, Plaintiff has submitted evidence under Section 82.003(a)(3), indicating that Caterpillar installed the seat in the 259D skid loader. Jeremy Jones, Caterpillar's cab team leader responsible for the cab development for the 259D skid loader, testified that he worked on integrating the seat into the machines. Jones Dep., [Dkt. No. 230-2], 19:22-25, 21:4-5. It cannot be disputed, at least in good faith, that the seat was integrated into the 249D skid loader – this is one of the bases of this lawsuit. This evidence creates a fact issue as to this exception

Second, Plaintiff has submitted evidence under Section 82.003(a)(4), indicating Caterpillar's exercised substantial control over the contents of an inadequate warning that caused Plaintiff's injuries. Plaintiff submits Caterpillar's Operation and Maintenance Manual for the 259D skid loader, which appears to be published exclusively by Caterpillar. [Dkt. No. 230-18]. This Operation and Maintenance Manual contains several warnings and instructions regarding the component parts of the 259D skid loader. This evidence creates a fact issue as to this exception

Third, Plaintiff has submitted evidence under Section 82.003(a)(4), indicating that Caterpillar's had actual knowledge of the defect in the seat. Plaintiff points to Caterpillar's internal documents –entitled "PPRD (Pre-Production Reliability Development)" – indicating that it received several complaints from its own testing personnel that the 259D skid loader's seat "gets way too hot" and "gets really hot, maybe too hot." [Dkt. No. 230-19]. Further, a June 22, 2012 Caterpillar document – entitled "Upgraded requirement spec for HEX seat heater temperature Rev. 02" – shows that the requirement for the seat's surface temperature was updated. [Dkt. No. 230-20]. This evidence creates a fact issue as to this exception.

Plaintiff's summary judgment evidence raises a genuine fact issue concerning the strict liability of Caterpillar. Therefore, Caterpillar is not entitled to summary judgment on Plaintiff's

products liability claim.

## 2. Plaintiff's Claims Under Section 82.003

Plaintiff brings several claims under the exceptions found in Section 82.003 – design defect, manufacturing defect, marketing defect, negligence, and gross negligence. Caterpillar argues that it is entitled to summary judgment on each claim because Plaintiff cannot prove each element of the causes of action. [Dkt. No. 194], ¶ 1.

### a. Design Defect

Caterpillar argues that it is entitled to summary judgment on Plaintiff's design defect claim. [Dkt. No. 194], ¶ 12. Caterpillar asserts that Plaintiff's experts have proposed numerous alternative designs for the seat, but have no testing, research, analysis, or opinions discussing how the proposed alternative designs were feasible. *Id.*

To establish a design defect claim under Texas law, the following must be proved by a preponderance of the evidence: (1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the design defect caused the injury. Tex. Civ. Prac. & Rem. Code § 82.005(a); *Timpte Indus., Inc. v. Gish*, 286 S.W. 3d 306, 311 (Tex. 2009). Texas law defines "safer alternative design" as a product design other than the one actually used that in reasonable probability:

> (1) would have prevented or significantly reduced the risk of the plaintiff's personal injury, property damage, or death without substantially impairing the product's utility; and
>
> (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

Tex. Civ. Prac. & Rem. Code § 82.005(b). Expert testimony is required to establish a design defect.

defect. *See Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 751 (5th Cir. 2018) (expert testimony and

objective proof required in a case where plaintiff alleged, *inter alia*, design and marketing defects).

The Court has reviewed Plaintiff's expert report from Hautanen, and finds that Hautanen identified the type of manufacturing defect involved and suggested at least five safer alternative design that would prevent or significantly reduce the risk of injury without substantially impairing the utility of the product: (1) a timer to shut off the seat heater after a predetermined exposure duration, (2) NTC/ PTC thermal devices to more adequately control and limit the seat surface temperature, (3) voltage regulators to control and limit the output power of the heating element, (4) a safety guard over the on/off switch, and (5) placement of the switch in a location that would be noticeable by the operator of the 259D skid loader. Hautanen Rep., [Dkt. No. 230-7], 47. Likewise, English opined that there are "numerous better alternative locations" for the seat heater switch, including locating "the switch in the pre-existing overhead accessory switch panel, which appears to provide extra 'empty' slots for accessory switches." English Rep., [Dkt. No. 230-8], 5. Caterpillar has failed to meet its initial burden in establishing the absence of a genuine issue of material fact.

Even if Caterpillar could overcome its burden, Plaintiff has set forth specific facts sufficient to raise a genuine issue of fact on his design defect claim. Hautanen opined, "Sears Manufacturing was aware of, and was provided by Backer HTI, heater controllers of a better, more effective, and safer design in October 2010 during the initial heater design for the Caterpillar SSL program." Hautanen Rep., [Dkt. No. 230-7], 41. The testimony from Eickenroht also indicates that a safety guard over the activation switch for the seat heater was feasible:

> Q. The concept of guarding a switch to prevent inadvertent activation, that would have been – technologically something that was familiar or should have been familiar to Sears when the SSL heater system was designed, should it not?
>
> A. Yes, sir. And if you take a close look at the design, it does have a

> protection versus an open switch, which we do have on other seat applications.

Eickenroht Dep., [Dkt. No. 230-3], 64:11-20. Caterpillar does not refute this evidence in its reply, [Dkt. No. 242]. Because fact issues remain as to Plaintiff's design defect claim, the Court finds summary judgment inappropriate for Caterpillar.

### b. Manufacturing Defect

Under Texas law, a manufacturing defect exists when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous. *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006). Texas law does not generally recognize a product failure or malfunction, standing alone, as sufficient proof of a product defect. *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 326 (5th Cir. 2014) (citing *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 42 (Tex. 2007). Rather, the deviation from design that caused the injury must be identified. *Casey*, 770 F.3d at 326. The plaintiff bears the burden of proving that the product was defective when it left the hands of the manufacturer and that the defect was a producing cause of the plaintiff's injuries. *Cooper Tire*, 204 S.W.3d at 800.

Caterpillar offers a short, four-sentence paragraph on why it is entitled to summary judgment on Plaintiff's manufacturing defect claim and makes the conclusory statement that the construction and quality of the 259D skid loader, the seat, and the heating element did not deviate from the manufacturers' specifications. [Dkt. No. 194], ¶ 19. Caterpillar argues that, in fact, the manufacturers, designers, and suppliers of the 259D skid loader seat and heating element "both continue to believe the Seat is a safe product." *Id.* (citing Eickenroht Dep., [Dkt. No. 194-3], 110:13-20, and Turner Dep., [Dkt. No. 194-5], 206:4-9). A closer look at the deposition testimony does not support the argument. Eickenroht testified that Sears was not aware of any defects

associated with the seat. (Eickenroht Dep., [Dkt. No. 194-3], 110:13-20). Turner testified that he did not have any reason to believe that "Calesco or the manufacturer or Backer HTI supplied Sears Manufacturing with … an unsafe product." Turner Dep., [Dkt. No. 194-5], 206:4-9. These excerpts do not indicate one way or the other whether any defendants or third-party defendants believe the seat is a safe product.

In any case, Plaintiff has presented evidence sufficient to raise a fact dispute. Hautanen pointed out several design deficiencies in the seat, including (1) the bimetallic thermal protection was located in a position that produced limited ability to effectively sense and respond to the seat surface temperature, and (2) both the manually woven and machine woven elements exhibited localized areas of elevated temperatures. Hautanen Rep., [Dkt. No. 230-7], 46. This evidence is unrefuted by Caterpillar in its reply. There exists a fact issue as to Plaintiff's manufacturing defect claim, and thus Caterpillar is not entitled to summary judgment on this claim.

### c. *Marketing Defect*

A defendant's failure to warn of a product's potential dangers when warnings are required is a type of marketing defect. *Caterpillar, Inc. v. Shears*, 911 S.W. 2d 379, 382 (Tex. 1995). "[A] marketing defect occurs when a defendant knows or should know of a potential risk of harm presented by a product but markets it without adequately warning of the danger or providing instructions for safe use." *Sims v. Washex Mach. Corp.*, 932 S.W.2d 559, 562 (Tex. App. – Houston [1st Dist.] 1995, no writ). To prevail on his marketing defect claim, Plaintiff must satisfy the following five prong test: (1) a risk of harm inherent in the product or which may arise from the intended or reasonably anticipated use of the product; (2) the product supplier actually knew or should have reasonably foreseen the risk of harm at the time the product was marketed; (3) the product contains a marketing defect; (4) the absence of a warning renders the product unreasonably

dangerous to the ultimate user or consumer of the product; and (5) the failure to warn must constitute a causative nexus in the product user's injury. *Id.*

The threshold question for a marketing defect claim is whether or not a duty to warn exists. *Nester v. Textron, Inc.*, No. 1:13-CV-920-DAE, 2015 WL 9413891, at *5 (W.D. Tex. Dec. 22, 2015). Generally, a manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product. *Am. Tobacco Co. v. Grinnell*, 951 S.W. 2d 420, 426 (Tex. 1997). The determination of whether a manufacturer has a duty to warn is made at the time the product leaves the manufacturer. *Caterpillar*, 911 S.W. 2d at 383. One exception to this duty is at issue in this case.

There is no duty to warn when the risks associated with a particular product are matters "within the ordinary knowledge common to the community." *Id.* As the Texas Supreme Court has recognized, common knowledge "connotes a general societal understanding of the risks inherent in a specific product or class of products." *Id.* Whether a duty to warn exists is a question of law for the court to decide from the facts surrounding the occurrence in question. *Smith v. Robin Am., Inc.*, 484 F. App'x 908, 912 (5th Cir. 2012). To ascertain whether a Texas tort plaintiff can survive a summary judgment motion in which the defendant argues it owed no legal duty to the plaintiff, the court must ascertain whether the plaintiff proffered evidence raising a material fact issue as to whether such a duty existed. *Id.* (citations and internal quotations omitted).

Caterpillar contends that it had no duty to warn of the risk of the seat and the seat heater because "as Plaintiff admits, 'the potential injury from seat heaters is well-documented… particularly to individuals with decreased sensitivity in their lower bodies.'" [Dkt. No. 194], ¶16 (citing Plaintiff's First Amended Complaint, ¶¶ 20-21). Caterpillar further contends that even if it had a duty, it provided adequate warnings and instructions for the 259D skid loader. *Id.* at ¶17.

Caterpillar once again relies upon a mischaracterization of the pleadings. Plaintiff's First Amended Complaint alleges that "Defendants knew or should have known of the risks associated with seat heaters, particularly to individuals with decreased sensitivity in their lower bodies. The potential injury from seat heaters is well-documented. Doctors have written about the hazard in at least five journal publications." [Dkt. No. 20], ¶ 20. This allegation about what should be known to persons in the industry cannot be construed as an admission that risks associated with seat heaters are well known to the general community. "[C]ommon knowledge is an extraordinary defense that applies only in limited circumstances. …[C]ommon knowledge encompasses only those things 'so patently obvious and so well known to the community generally, that there can be no question or dispute concerning their existence.'" *Grinnell*, 951 S.W.2d at 427.

Based on the evidence in the record viewed in a light most favorable to Plaintiff as the nonmoving party, the Court cannot conclude that the risk of severe burns from a seat heater is common knowledge as a matter of law in this case. It is not patently obvious that one can sustain severe burns from a seat heater, nor has Plaintiff admitted to such. Caterpillar has failed to meet its initial burden to establish the absence of a genuine issue of material fact. Because Caterpillar has not shown the absence of a genuine fact dispute and it has not shown that the common knowledge exception applies in this case, the Court concludes that Caterpillar owed a duty to Plaintiff to warn of the risk of severe burns as a matter of law. *See Nester*, 2015 WL 9413891, at *7 (finding that because no exception to the general duty to warn applied, the manufacturer owed a duty to warn of the risk of unintended acceleration of a utility vehicle). Accordingly, Caterpillar is not entitled to summary judgment on Plaintiff's marketing defect claim.

### d. Negligence

Caterpillar argues that Plaintiff cannot show a genuine issue of material fact on any

elements of Plaintiff's negligence claim. [Dkt. No. 194], ¶ 10. Caterpillar's assertion rests on its argument that "[i]t is undisputed that Caterpillar did not participate in the design or manufacturing of the [s]eat (including the heating element), and thus Caterpillar owed no duty to Plaintiff." *Id.* As with all negligence cases, the first inquiry is whether a duty was owed to Plaintiff. *See Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000) (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) ("To prevail on a negligence claim in Texas, a Plaintiff must establish three elements: '(1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach.'"). In Texas, whether a duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question. *Ford*, 230 F.3d at 830.

As discussed above, there is at least a fact issue as to whether Caterpillar participated in the design of the 259D skid loader's seat, and thus the question remains as to whether Caterpillar would have had a duty to design a safe seat. As noted by Plaintiff, a seller's duty to design a safe product is an obligation imposed by law. *Whitmire v. Terex Telelect, Inc.*, 390 F. Supp. 2d 540, 557 (E.D. Tex. 2005). "Whether a seller has breached this duty, that is, whether a product is unreasonably dangerous, is a question of fact for the jury." *Id.* Accordingly, Caterpillar is not entitled to summary judgment on this claim.

### e. Gross Negligence

Caterpillar argues that it did not have a subjective awareness of the risk of injury to from the 259D skid loader seat and did not proceed with a conscious indifference to the safety of others. [Dkt. No. 194], ¶¶ 20-26. Gross negligence requires a showing of two elements:

> (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

> (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed[s] in conscious indifference to the rights, safety, or welfare of others.

*Boerjan v. Rodriguez*, 436 S.W. 3d 307, 311 (Tex. 2014) (citing *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001)). Under the objective element, an extreme risk is "not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Boerjan*, 436 S.W. 3d at 311 (quoting M*obil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998)). Under the subjective element, "actual awareness means the defendant knew about the peril, but its acts or omissions demonstrated that it did not care." *Boerjan*, 436 S.W. 3d at 311. "These elements therefore, in essence, require that [P]laintiff produce some evidence showing that the [259D skid loader] sold to [Plaintiff's employer] posed an extreme degree of risk and [Caterpillar] had actual, subjective awareness that the [259D skid loader] posed that risk but [Caterpillar] proceeded with 'conscious indifference' to the safety and welfare of the plaintiff." *See Disalvatore v. Foretravel, Inc.*, No. 9:14-CV-150, 2016 WL 3951426, at *15 (E.D. Tex. June 30, 2016), *report and recommendation adopted*, No. 9:14-CV-150, 2016 WL 3926575 (E.D. Tex. July 21, 2016). Circumstantial evidence may suffice to prove either element. *Boerjan*, 436 S.W. 3d at 311.

Under Texas law, gross negligence must be proved by clear and convincing evidence. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W. 3d 227, 234 n. 2 (Tex. 2004). Where the "'clear and convincing' evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." *Id.*

Caterpillar makes an unsuccessful argument under the subjective awareness prong of gross

negligence. Plaintiff has set forth abundant evidence suggesting that Caterpillar had an actual subjective awareness of the seat heater malfunctioning. Plaintiff points to Jones's deposition testimony, where Jones testified that Caterpillar builds prototype machines and then would evaluate the machines. Jones Dep., [Dkt. No. 230-2], 123:18-124:3. During a January 31, 2013 evaluation, operator Jeremy Thomas indicated in a PPRD document, "Heated seat gets really hot maybe too hot." [Dkt. No. 230-19], 4. Complaints from April 26, 2013 and February 7, 2014 also indicate that Caterpillar's personnel documented that the seat gets too hot. *Id.* at 3, 5. Plaintiff also points to customer complaints about the seat overheating. For example, on March 22, 2012, a customer reported that the heated seat failed and burned the operator's legs. [Dkt. No. 230-24], 3. On January 23, 2013, another customer complained that the seat was damaged and burned the operator "at the back." *Id.* at 7.

This evidence indicates that Caterpillar had actual subjective knowledge of the seat heater malfunctioning before Plaintiff was injured. Further, additional complaints were recorded in June 2014, September 2014, and November 2014, dates that were after Plaintiff was injured. [Dkt. No. 230-23]. Notably, the November 2014 complaint indicated that "the heated seat in this machine is getting way too hot, to the point is [sic] feeling like it is burning." *Id.* at 8. There are genuine issues of material facts that would preclude summary judgment on Plaintiff's gross negligence claim. Therefore, summary judgment is not available to Caterpillar.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, Caterpillar's summary and declaratory judgment motion [Dkt. No. 179] should be denied because (1) Caterpillar's motion for declaratory judgment is procedurally defective, and (2) fact issues remain to be decided for Caterpillar's contractual indemnity claim regarding Sears's alleged duty to defend Caterpillar and Caterpillar's statutory

indemnity claim. Therefore, it is **RECOMMENDED** that Caterpillar's Motion for Summary and Declaratory Judgment [Dkt. No. 179] be **DENIED**.

Likewise, Caterpillar's summary judgment motion [Dkt. No. 194] should also prove unsuccessful because fact issues exist for each of Plaintiff's claims. Therefore, it is **RECOMMENDED** that Caterpillar's Motion for Summary Judgment [Dkt. No. 194] be **DENIED**.[6]

**SIGNED this 8th day of February, 2019.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[6] A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings, and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); see *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) *(*en banc).