IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JOHN K. STEPHENSON, | § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 2:16-CV-00071-JRG-RSP |
| CATERPILLAR INC. and SEARS MANUFACTURING CO., | § § § | |
| *Defendants*. | § § | |

## MEMORANDUM ORDER

Before the Court is Third-Party Defendant Backer AB's[1] Manufacturing Co.'s motion to strike Defendant Sears Manufacturing Co.'s ("Sears") retained electrical engineering expert, Raphael A. Franco, PhD. [Dkt. No. 357]. Backer AB seeks to preclude Dr. Franco from testifying in this case on the grounds that Dr. Franco is unqualified to testify, and his proffered testimony is irrelevant and unreliable.

## LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

---

[1] The Court takes notice from the record that Backer BHV AB's correct name is now "Backer AB."

1

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Pursuant to Rule 702, the court must act as a gatekeeper, ensuring that admitted evidence is reliable and relevant. *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999) (citing *Daubert*, 509 U.S. at 592-93, 597, 113 S. Ct. at 2796, 2799). Accordingly, the Court's gatekeeping function involves a two-part inquiry into reliability and relevance. *In re Pool Prod. Distribution Mkt. Antitrust Litig.*, 166 F. Supp. 3d 654, 661 (E.D. La.), *appeal dismissed* (5th Cir. Oct. 27, 2016).

As to the reliability inquiry, the proponent of the expert's opinion testimony need not prove that the expert's testimony is *correct* – the proponent need only prove by a preponderance of the evidence that the testimony is reasonably *reliable*. *Johnson*, 685 F.3d at 459 (emphasis added); *see also i4i Ltd. v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010) *aff'd*, 564 U.S. 91, 131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011) ("*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness."). The expert opinion must be grounded in the methods and procedures of science – the opinion must go beyond unsupported speculation or subjective belief. *Daubert*, 509 U.S. at 590, 113 S. Ct. 2786. The court's "focus, of course, must be solely on principles and methodology, *not* on the conclusions that they generate." *Id.* at 595, 113 S. Ct. 2786 (emphasis added). Under Rule 702 and *Daubert*, "'a district court has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion.'" *Johnson v. Arkema*, 685 F.3d 452, 458-59 (5th Cir. 2012) (quoting *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 354 (5th Cir. 2007)).

In determining if expert testimony is reliable, courts consider the following flexible, non-exhaustive list of factors:

> (1) whether the theory or technique has been tested;

> (2) whether the theory or technique has been subjected to peer review and publication;
> (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and
> (4) whether the theory or method has been generally accepted by the scientific community.

*Johnson*, 685 F.3d at 459 (citing *Curtis*, 174 F.3d at 668-69 (citing *Daubert*, 509 U.S. at 593-94, 1113 S. Ct. 2786)). Federal of Evidence 703 also provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

As to the relevance inquiry, the Court must determine whether the expert's reasoning or methodology is tied to the facts of the case and whether the expert's testimony will assist the trier of fact to understand the evidence. Under the Federal Rules of Evidence, evidence is relevant if: (1) it has any tendency to make a fact more or less probable than it would be without the evidence; and, (2) the fact is of consequence in determining the action. Fed. R. Evid. 401.

## ANALYSIS

### A. Dr. Franco's Qualifications

Backer AB questions Dr. Franco's qualifications. Backer AB argues that Dr. Franco has no prior experience working with seat heaters, did not learn anything about electrical heaters while earning his electrical engineering degree, and has no prior work experience or training that relates to seat heater design or usage. [Dkt. No. 357], ¶ 10. Backer AB contends that Dr. Franco's

3

qualifications rest solely on a 20-hour continuing education course on electrical appliance fires taken in 1999 and reviewing literature from internet searches. *See id.* at ¶ 11. Thus, Backer AB contends, Dr. Franco is not qualified to testify, as an expert "must have specifically worked with, tested, or in some fashion studied seat heater design and applications." *Id.* at ¶ 14 (citing *Silva v. Am. Airlines, Inc.*, 960 F. Supp. 528, 531 (D. P.R. 1997).

The Court finds that Dr. Franco is adequately qualified to render an opinion regarding the seat heater. Based on his curriculum vitae, Dr. Franco received a Bachelor of Science, a Masters of Science, and a Doctor of Science in electrical engineering, and has nearly 50 years of professional experience in the relevant field of electrical engineering. Dr. Franco testified that the relevant part of the 259D skid loader consists of two heating elements and a single bi-metal thermostat, a system that he himself could have designed. Indeed, Dr. Franco has experience with working with bimetallic thermometers, one of the parts of the seat heater at issue in this case. That Backer AB voices concerns with Dr. Franco's experience with working specifically with seat heaters is a subject for cross-examination, and not an argument focusing on Dr. Franco's methodology in his expert report. Thus, the Court concludes that Dr. Franco is qualified, from an electrical engineering perspective, to offer opinions regarding the seat heater at issue in this case.

### B. The Reliability and Relevance of Dr. Franco's Opinions

Backer AB asserts that the Court should exclude all of Dr. Franco's opinions regarding Backer AB on reliability and relevance grounds for four reasons, each of which do not trigger exclusion under *Daubert*.

First, Backer AB argues that Dr. Franco's opinions ignore "undisputed" facts. [Dkt. No., 357], ¶ 30. Backer AB asserts that Dr. Franco's seventh and nineteenth opinions are based on an incorrect assertion that Backer AB chose to use a 50º C thermostat in the heating element. *Id.* at

¶¶ 18-19. Backer AB argues that Sears's corporate representatives testified that Sears chose the 50º C threshold for the thermostat, not Backer AB. *Id.* at ¶ 19. Sears opposes this argument, contending that who chose the 50º C thermostat is a fact that remains disputed. [Dkt. No. 369], ¶ 2. In its reply brief, Backer AB further disputes this fact by offering argument from its pending summary judgment motion – "the evidence shows that Sears was presented with a variety of samples with overheat protectors at varying temperatures and that Sears, after testing the various samples, directed that a 50º C overheat protect be used in the heating element at issue." [Dkt. No. 375], ¶ 6.

Dr. Franco's reliance on the disputed fact that Backer AB challenges – i.e., who chose the 50º C thermostat – reflects that Dr. Franco may have resolved this disputed fact in favor of Sears before reaching his conclusions in his seventh and nineteenth opinions. The reliance on a disputed fact does not render his testimony inadmissible. As pointed out by Chief Judge Sarah Vance in the Eastern District of Louisiana, 'While *Daubert*'s reliability analysis applies to "the facts underlying the expert's opinion," expert testimony need only be based on "sufficient facts or data."' *Nagle v. Sheriff Marlin Gusman*, No. CV 12-1910, 2016 WL 541436, at *5 (E.D. La. Feb. 11, 2016) (citing Fed. R. Evid. 702 and *Moore v. Int'l Paint, LLC*, 547 Fed. App'x 513, 515 (5th Cir. 2013). Indeed, "[w]hen facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts." *Nagle*, 2016 WL 541436, at *5 (citing Fed. R. Evid. 702, Advisory Committee Note and *Moore*, 547 Fed. App'x at 515). Backer AB's concerns about Dr. Franco's seventh and nineteenth opinion go to their weight. "'[Q]uestions relating to the bases and sources of an expert's opinion, rather than its admissibility, should be left for the jury's consideration.'" *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir.1996) (quoting *Viterbo v. Dow*

*Chem. Co.*, 826 F.2d 420, 422 (5th Cir.1987)). Accordingly, Dr. Franco's opinions should go to the jury.

Second, Backer AB argues that Dr. Franco's opinions "covers topics that are not at issue." [Dkt. No., 357], ¶ 30. Backer AB contends that eighth, tenth, and nineteenth opinions are based on an irrelevant assertion that Backer AB chose to use a thermostat with less than optimal endurance. *Id.* at ¶¶ 22-23. Backer AB asserts that opinions about the thermostat's endurance have no bearing on Plaintiff's injuries, and thus be excluded as irrelevant. *Id.* Sears responds that Dr. Franco's opinions embody conclusions, and conclusions should be addressed at trial rather than an evidentiary motion. [Dkt. No. 369], ¶ 3. The Court agrees with Sears – Backer AB's concerns lie with Dr. Franco's conclusions about the thermostat, not the methodology in reaching that conclusion. Thus, Dr. Franco's eighth, tenth, and nineteenth opinions are admissible, subject to the trial judge's rulings on relevance at trial. *See Daubert*, 509 U.S. at 595 (finding that courts must focus "solely on principles and methodology, *not* on the conclusions that they generate.").

Third, Backer AB argues that Dr. Franco proffers inadmissible "opinions" regarding corporate knowledge or intent. [Dkt. No., 357], ¶ 30. Backer AB asserts that Dr. Franco's sixth opinion is based on Sears's corporate intent when Dr. Franco opined, "Sears [does] not have the expertise and resources to design and/or manufacture heaters for seats. They depend on seat-heater companies to design and provide them with a safe product." Franco Expert Rep., [Dkt. No. 357-3], 11. The Court does not agree with Backer AB. Rather, Dr. Franco's sixth opinion discusses Sears's business operations, not necessarily Sears's intent or state of mind. Such a conclusion is based on the facts of the case, as required by Federal Rules of Evidence 702 and 703. Dr. Franco's sixth opinion does not warrant exclusion.

Fourth, Backer AB argues that Dr. Franco's opinions encompass inaccurate impressions of the facts, rendering the opinion inadmissible. [Dkt. No., 357], ¶ 27. Backer AB contends that Dr. Franco's eleventh opinion improperly and inaccurately states that Backer AB did not express concerns regarding safety for the single stage seat heater. *Id.* Backer AB furthers asserts that Dr. Franco's eleventh opinion falls within the purview of the jury's understanding, rendering expert testimony unnecessary, given that testimony about Backer AB's corporate intent is a matter for the jury. *Id.*

The Court does not agree with Backer AB's reading of Dr. Franco's eleventh opinion. Dr. Franco's opinion indicates that Backer AB did not express safety concerns about the seat heating element to Sears, not that Backer AB does not care at all about the safety of the seat heaters, as Backer AB seems to suggest. While the Court agrees that Dr. Franco should not testify about Backer AB's state of mind or intent, *see Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.*, No. 4:15-CV-307, 2018 WL 626355, at *3 (E.D. Tex. Jan. 30, 2018) and *Retractable Techs. Inc. v. Abbott Labs., Inc.*, No. 5:05-CV-157, 2010 WL 11531436, at *6 (E.D. Tex. June 18, 2010), Dr. Franco's eleventh opinion is admissible.

**CONCLUSION**

Dr. Franco is certainly qualified to testify about the seat heater at issue. The heart of Backer AB's contentions lies with Dr. Franco's conclusions, not his methodology. Because the Court is focused on the methodology, *not* Dr. Franco's conclusions, the Court finds that Dr. Franco's methodology is based on the facts of the case, and within the bounds of reliability. Because Dr. Franco is qualified and his proffered testimony is both relevant and reliable, Backer AB has the opportunity to conduct vigorous cross-examination of Dr. Franco, present contrary evidence, and seek careful instruction on the burden of proof at trial – these are the traditional and appropriate

means of attacking admissible evidence. *Daubert*, 509 U.S. at 596. Accordingly, Backer AB's motion to strike Dr. Raphael A. Franco is **DENIED**.

**SIGNED this 21st day of February, 2019.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE